## F. W. FITCH CO. *v.* UNITED STATES.

No. 181.   Argued December 13, 1944.—Decided January 15, 1945.

*Mr. Arnold F. Schaetzle,* with whom *Mr. James M. Stewart* was on the brief, for petitioner.

*Mr. Andrew D. Sharpe,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and *Messrs. Sewall Key* and *J. Louis Monarch* were on the brief, for the United States.

*Messrs. Joseph H. Choate, Jr.* and *Maurice Léon* filed a brief as *amici curiae,* urging reversal.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Section 603 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 261, Internal Revenue Code § 3401, imposes on toilet preparations sold by manufacturers or producers an excise tax equivalent to stated percentages "of the price for which so sold." Petitioner was subject to this tax from October 1, 1936, to June 30, 1939, and has sought a refund of a portion of the tax paid on the ground that its selling and advertising expenses should have been excluded from the selling prices in computing the tax. The District Court after trial upheld this claim and awarded a refund, 52 F. Supp. 292, but the court below reversed that judgment, 141 F. 2d 380. The alleged conflict with the decisions of the Circuit Court of Appeals for the Seventh Circuit in *Campana Corp.* v. *Harrison,* 114 F. 2d 400, and *Campana Corp.* v. *Harrison,* 135 F. 2d 334, led us to grant certiorari.

The controversy here centers about § 619 (a) of the Act, which provides for the inclusion and exclusion of certain items in computing the selling price for purposes of the tax levied by § 603 as well as various other sections. Section 619 (a) states that, in computing the sales price,

". . . there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this title, whether or not stated as a separate

charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations."

Petitioner contends that advertising and selling expenses fall within the term "other charge" appearing in the last sentence of § 619 (a) and hence are excludable in determining the selling price for tax purposes. This claim, however, is refuted by both the spirit and the letter of this statutory provision.

Congress sought in the Revenue Act of 1932 to use the manufacturer's or wholesaler's selling price, rather than the retail price, as the measure of the excise taxes imposed by § 603. 75 Cong. Rec. 11383, 11657. Section 619 (a) was designed to lay down specific rules for determining this selling price, especially in relation to costs incurred after the article itself had been manufactured. It provides for the use of the manufacturer's or producer's f. o. b. price at the factory or place of production. In essence, all manufacturing and other charges incurred prior to the actual shipment of an article and reflected separately or otherwise in the f. o. b. wholesale price are to be included in the sale price underlying the tax, while all charges incurred subsequent thereto are to be excluded. Hence any additional charge which a purchaser would not be required to pay if he accepted delivery of the article at the factory or place of production may be so excluded. See H. Rep. No. 708 (72d Cong., 1st Sess.) p. 37; S. Rep. No. 665, Part 3 (72d Cong., 1st Sess.) p. 3; H. Conf. Rep. No. 1492 (72d Cong., 1st Sess.) p. 22.

Advertising and selling expenses incurred by a manufacturer such as petitioner clearly fall within the class of charges which Congress intended to be included in the tax base. Regardless of whether we consider such ex-

penses technically as manufacturing costs, it is obvious that they are incurred prior to the actual shipment of articles to wholesale purchasers and that they enter into the composition of the wholesale selling price. Even if the purchaser accepts delivery at the factory, he pays for the advertising and selling expenses. Thus they must be included in the taxable sales price.

The inclusion of these expenses is plainly warranted by the language of § 619 (a). Pre-shipment charges relative to coverings, containers and placing an article in condition for shipment are specifically included in the determination of the selling price. But a subsequent "transportation, delivery, insurance, installation, or other charge" is to be excluded if properly established. In the setting of this case, no rule of reason or grammar justifies placing advertising and selling expenses within the meaning of this exclusionary sentence.

To begin with, advertising and selling expenses are obviously not comparable to the specified charges for transportation, delivery, insurance or installation—all of which are incurred subsequent to the preparation of an article for shipment and are not included in the manufacturer's f. o. b. selling price. Hence advertising and selling expenses cannot be encompassed by the term "other charge" unless that term be taken to include charges entirely dissimilar to those specified. This term, however, was understood by its framers to mean "like charges" or "similar charges" to those specifically enumerated in the same sentence. H. Rep. No. 708 (72d Cong., 1st Sess.) p. 37; S. Rep. No. 665, Part 3 (72d Cong., 1st Sess.) p. 3; H. Conf. Rep. No. 1492 (72d Cong., 1st Sess.) p. 22. When this fact is added to the general intent of Congress to include all costs or charges incurred prior to shipment, the applicability of the *ejusdem generis* rule to the term "other charge" becomes clear. This rule, which appro-

priately may be invoked here since it does not conflict with the general purpose of the statute, compare *Securities & Exchange Commission* v. *Joiner Corp.*, 320 U. S. 344, 350, 351, with *Smith* v. *Davis,* 323 U. S. 111, limits the "other charge" to expenses similar in character to those incurred for transportation, delivery, insurance and installation. Since advertising and selling expenses arise prior to shipment and are necessarily components of the f. o. b. selling price, the term "other charge" cannot cover them.[1] They must be included in the tax base. Such has been the consistent administrative construction of the statute, G. C. M. 21114, 1939-1 Cum. Bull. 351, 353. And such is the result made necessary by the accepted rules of statutory construction.[2]

It is argued that this conclusion results in a discrimination against a manufacturer who indulges in his own advertising and selling campaigns in favor of one whose products are advertised by his customers and that Congress could not have intended such a discrimination. But this discrimination, to the extent that it may exist, is an unavoidable consequence of an excise tax based on the

---

[1] The parenthetical matter following the term "other charge" in the last sentence of § 619 (a)—"(not required by the foregoing sentence to be included)"—is not significant in this case. It serves simply to provide that, to the extent that the provisions for inclusion and exclusion may overlap, the former shall control.

[2] Section 3 (a) of the Revenue Act of 1939, 53 Stat. 862, 863, Internal Revenue Code § 3401, excluded from the sale price "a transportation, delivery, insurance, or other charge, *and the wholesaler's salesmen's commissions and costs and expenses of advertising and selling.*" (Italics added.) Section 3 (b) made this amendment prospective only and hence § 3 (a) cannot be taken as a Congressional declaration that the advertising and selling expenses were intended to be excluded from the selling price under the Revenue Act of 1932. On the contrary, the very fact that Congress found it necessary in 1939 to exclude such expenses specifically is persuasive evidence that prior thereto advertising and selling expenses were not meant to be excluded.

wholesale selling price. Such cost factors as labor, materials and advertising naturally vary among competing manufacturers; different costs and different methods of doing business in turn may cause the wholesale selling prices to lack uniformity. And if these prices are taxed without adjustment for differing cost factors, tax inequalities and discriminations inevitably result. But where, as here, a flat tax is placed on the wholesale selling prices and no statutory provisions are made for relief from the resulting natural tax inequalities, courts are powerless to supply it themselves by imputing to Congress an unexpressed intent to achieve tax uniformity among manufacturers selling at wholesale.[3]

Finally, petitioner urges that § 619 (b) must also be considered in order to ascertain the true Congressional intent and in order to give § 619 (a) its proper construction. But § 619 (b) merely provides that where the manufacturer sells at retail, on consignment or otherwise than through an arm's length transaction, the tax shall be based upon a figure determined by the Commissioner with reference to the prices at which similar articles are sold in the ordinary course of trade. Inasmuch as petitioner's sales were made at wholesale, § 619 (b) has no direct application to this case. But it does serve to emphasize the failure of Congress to make similar provisions for tax equalization under § 619 (a) where the manufacturer's sales are at wholesale. It cannot, however, vary the plain intent and language of § 619 (a) and Congres-

---

[3] Congress has subsequently realized that the excise tax on the wholesale selling price created tax inequalities among manufacturers. In § 552 of the Revenue Act of 1941, 55 Stat. 687, 718, Congress substituted a retail excise tax for the manufacturer's excise tax on toilet preparations. The reasons assigned for the change were that under the earlier law "evasion is substantial and inequitable competitive situations are created." H. Rep. No. 1040 (77th Cong., 1st Sess.), p. 33.

sional statements [4] relating to the desirability of eliminating discriminations against manufacturers making retail sales cannot be taken as evidence of a desire to prevent the natural inequalities that result when a tax is placed on the wholesale selling price.

*Affirmed.*

MR. JUSTICE ROBERTS concurs in the result.

[4] See H. Rep. No. 708 (72d Cong., 1st Sess.), pp. 32–33; 75 Cong. Rec. 5693, 5694.