### CAMPANA CORP.
v.
### COMMISSIONER OF INTERNAL REVENUE.
#### No. 10929.

United States Court of Appeals
Seventh Circuit.

Feb. 26, 1954.

**898**

Elden McFarland, Washington, D. C., for petitioner.

H. Brian Holland, Asst. Atty. Gen., I. Henry Kutz, Ellis N. Slack, A. F. Prescott, Carolyn R. Just, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This case is here on petition for review of a decision of the Tax Court of the United States, entered January 30, 1953, determining deficiencies in petitioner's excess profits taxes for the two fiscal years ending June 30, 1943 and June 30, 1944. The deficiencies as determined depend upon a resolution of the issue as to whether the amounts of $85,473.31 and $82,978.22, paid by petitioner as excise taxes on sales to Campana Sales Company, petitioner's vendee, during the fiscal years 1937 and 1938, were includible as part of the sales price to the vendee and accrued as income to petitioner for such years. We find no occasion to make a detailed statement of the rather complicated facts and figures in order to demonstrate the manner by which the issue as to petitioner's taxes in 1937 and 1938 affects and controls its deficiencies determined for the years 1943 and 1944. It is sufficient that the parties are in agreement that such is the case.

The facts as found by the Tax Court were stipulated by the parties and, for the purpose of bringing into focus the issue for decision, may be briefly stated. Petitioner is engaged in the manufacture and sale of toilet preparations and pharmaceuticals. Since July 1, 1933, petitioner has sold its entire production to Campana Sales Company (sometimes referred to as the distributor), the latter handling the distribution, advertising and sales promotion of petitioner's products. The corporate stock of petitioner and that of the distributor were held by the same five people, three individuals holding 90% of the stock in both companies (for a detailed description see footnote, Compana Corp. v. Harrison, 7 Cir., 114 F.2d 400, 402).

Petitioner and the distributor were parties to a sales contract which fixed the prices at which petitioner's products were to be sold to the distributor and which contained a provision, around which the instant controversy largely revolves, as follows: "Any excise tax now or which may hereafter be imposed by the State of Illinois or the United States shall be added to the above prices and paid by the Distributor."

The basis for computation by the Commissioner of the 10% manufacturer's excise taxes imposed on cosmetic and toilet preparations by Section 603 of the Revenue Act of 1932, 26 U.S.C.A. § 3401, has long been in dispute between the Commissioner and taxpayer, and in one form or another has been before this court on two occasions. Campana Corp. v. Harrison, 7 Cir., 114 F.2d 400, and Campana Corp. v. Harrison, 7 Cir., 135 F.2d 334.

From 1933 to 1939, taxpayer paid the excise taxes monthly in separate amounts, a portion of which was paid without protest and the remainder under protest. For the years with which we are now concerned, that is, 1937 and 1938, there were paid under protest taxes in the amount of $85,473.31 for the former and $82,978.22 for the latter. Petitioner instituted suit for refund of the taxes paid under protest for the years 1933 to 1939, and was awarded a summary judgment by the District Court. This judgment included the protested taxes paid during the years 1937 and 1938. Upon appeal by the Commissioner, the judgment was reversed by this court and remanded for further proceedings, in a decision rendered May 12, 1943. Campana Corp. v. Harrison, 135 F.2d 334. The contention which petitioner had advanced in support of its claim for refund was decided adversely to it by the Supreme Court in F. W. Fitch Co. v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472, and on June 20, 1945, petitioner dismissed its suit then pending in the District Court.

On June 25, 1945, petitioner and the Sales Company entered into an accounting agreement as to the amounts due the former from the latter by reason of the contract provision heretofore quoted. On the same date, the Sales Company paid such amounts to petitioner, including those of $85,473.31 and $82,978.22, being the amounts paid under protest by petitioner for the years 1937 and 1938.

Petitioner during all the years material to the instant controversy kept its books and made its tax returns on the accrual method of accounting. In its tax returns for the fiscal years 1937 and 1938, it deducted the amounts of excise tax paid by it under protest during such years, for which it subsequently instituted a suit against the Collector for refund. Petitioner's sole contention now rests upon the premise that the Sales Company under its contract became liable in 1937 and 1938 to pay petitioner the protested taxes, and that petitioner being upon the accrual basis was entitled to accrue such taxes as income for those years.

This contention was denied by the Commissioner and sustained by the Tax Court, from which the instant petition for review comes. If petitioner's theory that it was entitled to accrue as income such protested taxes for the years 1937 and 1938, which it did not receive until 1945, is sound, the deficiencies in its tax for the years 1943 and 1944 were improperly determined and the Tax Court must be reversed. On the other hand, if petitioner was not so entitled, such deficiencies were properly determined and the Tax Court must be affirmed.

Petitioner neither collected nor accrued on its books such amounts in 1937 and 1938, because, as stated in its brief, "it deemed those amounts to be unlawfully imposed and it desired to contest the imposition thereof." The reason is amplified by the further statement, "If it had collected the amount of the protested excise taxes it could not have maintained a suit to recover those taxes from the Collector because Section 621 (d) of the Revenue Act of 1932, 26 U.S.C.A. § 3443, provided that no overpayment of such excise tax could be refunded if the taxpayer had collected the amount of the overpaid taxes from its vendee."

It is argued that "petitioner's *right* to receive the amounts in issue arose under the sales contract when the products were sold to the Sales Company. This was during the fiscal years 1937 and 1938. The amounts were fixed and definite. There was no contingency with respect to that right."

No good purpose could be served in discussing the numerous cases called to our attention. They disclose that pertinent principles of law are not generally in dispute but that it is their application to the facts of a particular case. Petitioner relies strongly upon the rule stated in Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 184, 54 S. Ct. 644, 645, 78 L.Ed. 1200, where the court said: "Keeping accounts and making returns on the accrual basis, as dis-

tinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues."

In Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 286, 64 S.Ct. 596, 599, 88 L.Ed. 725, the rule is stated thus: "The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount."

In Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 420, the taxpayer on the accrual basis deducted state taxes assessed against him, the liability for which he denied and which he was contesting in the state court. The court recognized the general rule that a liability might be accrued in the year in which it became fixed and certain, but held the taxpayer was not entitled to an accrual in the year claimed because of its contingent nature. The court stated, 320 U.S. at page 519, 64 S.Ct. at page 365: "Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated."

We think the reasoning thus applied is apropos to the instant situation, where the right of petitioner to receive payment from the Sales Company or the latter's liability to pay was dependent upon the result of petitioner's suit for refund against the Collector. Certainly the agreement between the parties did not contemplate that petitioner was entitled to add an unlawful tax to the price at which it sold its products to the Sales Company. It was paid under protest by petitioner, which for years vigorously asserted that the tax was unlawfully imposed. The fact that it was determined otherwise in 1945 does not militate against the uncertain and contingent nature of its claim against the Sales Company in 1937 and 1938. Suppose petitioner had been successful in its suit against the Collector. Would there be any basis for the contention that it was entitled to collect from the Sales Company during those years? Or suppose petitioner had sued the Sales Company in 1937 or 1938, to recover the tax which it had paid under protest, and that the Sales Company had interposed as a defense that it was not liable because the tax had been unlawfully imposed upon petitioner. Can it be doubted that such a defense, if successful, would have resulted in a denial of recovery by the petitioner? Obviously, if the Sales Company was not liable to pay during those years under the circumstances existing, petitioner was without right to accrue the liability as income. This discussion merely points up to what we think is the fact, that is, that petitioner's right to receive payment and the liability of the Sales Company were contingent upon the result attained by petitioner in its suit for refund against the Collector. It was only in the event that petitioner was unable to obtain a refund from the Collector that the Sales Company became liable for that which both parties considered and treated as an unlawful imposition in 1937 and 1938.

Petitioner, in arguing that there was no contingency with respect to its right to collect from the Sales Company during the years 1937 and 1938, states: "But petitioner voluntarily postponed the time of payment, for obvious business reasons, it wanted to contest the imposition of the tax itself." We think petitioner by its suit against the Collector sought to do more than merely postpone the time of payment. What it attempted to do and would have done if it had been successful was to extinguish

the tax and consequently any liability on the part of the Sales Company.

Petitioner makes the specious argument that, after all, its protestation of the tax and suit for refund were voluntary acts on its part and could not affect the rights and obligations of the parties as fixed by contract. This argument means, in effect, that petitioner in 1937 and 1938 stated to the Collector, "This tax is unlawful, it is paid under protest and we will seek its refund." Now it argues that it had a right during the same years to assert to the Sales Company, "The tax imposed by the government is lawful and under our contract, you are now liable for its payment." There is inherent in this two-faced contention an inconsistency which we think impossible of resolution on any basis other than that the rights of the parties were contingent.

Furthermore, the contingent nature of petitioner's claim against the Sales Company for the years 1937 and 1938 is emphasized by the treatment accorded such claims by each of the parties. While we do not regard this as conclusive of their legal rights, we think it is pertinent. The items were not accrued on taxpayer's books as income in any manner and neither were they accrued on the books of the Sales Company as items of liability. Taxpayer in its audit report for June 30, 1938 stated: "In the event Campana Corporation fails to recover from the Collector of Internal Revenue at Chicago the additionally assessed taxes and interest, it may have the right, under its contract with Campana Sales Company, to proceed against that Company for the recovery thereof." Likewise, the Sales Company in an audit report dated June 30, 1938 stated: "Campana Sales Company, under a contract with Campana Corporation, may become liable for an aggregate amount of $489,-044.34 of Manufacturer's excise taxes additionally assessed against Campana Corporation by the United States Bureau of Internal Revenue for the period from July 1, 1933, to June 30, 1938 * * *." And, as already noted, petitioner in its tax returns for 1945, after its settlement with the Sales Company, reported the amounts received from the latter as income, and the Sales Company in its tax return for that year deducted the amounts which it paid to petitioner.

In our view, the issue presented was correctly decided by the Tax Court, and its decision is

Affirmed.