**STOWE-WOODWARD, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 61-57.**

United States District Court
D. Massachusetts.

Dec. 27, 1961.

M. Gordon Ehrlich, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

Rufus E. Stetson, Dept. of Justice, Washington, D. C., W. Arthur Garrity, Jr., U. S. Atty., James C. Heigham, Asst. U. S. Atty., Boston, Mass., for defendant.

CAFFREY, District Judge.

This is an action to recover Federal manufacturers' excise taxes brought by the plaintiff corporation under 28 U.S.C.A. § 1346(a) (1). Plaintiff seeks to recover $3,377.25, plus interest, for 1957 and 1958 excise taxes it alleges were assessed and erroneously collected by the Government. The following facts have been stipulated as true by counsel for the parties and I so find:

1. Taxpayer is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 181 Oak Street, Newton Upper Falls, Massachusetts.

2. Taxpayer manufactures hard rubber bowling balls at 181 Oak Street, Newton Upper Falls, Massachusetts. The taxpayer's sales territory for bowling balls encompasses practically the entire United States. The balls are packed four to a carton, and only on rare occasions will a quantity of less than a carton be sold.

3. All shipments from 181 Oak Street directly to customers are either sent freight collect, or the freight is billed separately to the customer. All balls shipped from 181 Oak Street directly to customers are sold at a uniform base price F.O.B. plant.

4. Shipment of the bowling balls over land to the west coast of the United States used to cost about $1.50 per ball. In order to meet competition on the west coast, bowling balls were sent to public warehouses on the west coast (Los Angeles and Oakland, California, and Tacoma, Washington) in carload or shipload lots. As a result of said change, the transportation charges of a ball were reduced from about $1.50 per ball to approximately $.75 or $.80 per ball for shipping and warehouse costs. The warehouses stocked the bowling balls and delivered them to the purchasers on notification from the taxpayer. The purchaser made his own arrangements for delivery from the public warehouse to his establishment. Part of the shipments to the public warehouse were pursuant to completed sales; however, most of the shipments were made to the warehouses in order to maintain an inventory sufficient to take care of expected west coast business.

5. Shipments were made to the public warehouses so as to be able to sell the balls at competitive prices on the west coast by reducing shipping charges and in order to speed delivery. Shipments to these warehouses were usually made by boat in order to keep transportation costs to a minimum. The customer was billed for the F.O.B. price at the taxpayer's plant (said price being the same as the uniform base price F.O.B. plant for shipments directly from the plant to customers), plus a charge for the warehousing and shipping costs. The following represents the usual manner in which a customer was billed:

| | | |
|---|---|---|
| 1. | Base price of bowling ball | $11.70 |
| 2. | Add drilling charge | .50 |
| | | 12.20 |
| 3. | Add 10% excise tax | 1.22 |
| | | 13.42 |
| 4. | Deduct drilling charge | .50 |
| | | 12.92 |
| 5. | Prepaid warehouse and freight charges | .75 |
| | Total billed | $13.67 |

Of the prepaid warehouse and freight charges specified in item 5, supra, $.50 represents the shipping costs from the taxpayer's plant to the west coast warehouses, the balance of the charges representing the average warehouse and handling charges imposed by the west coast

public warehouses. All customers were billed a flat $.75 for this purpose.

6. In computing its manufacturer's excise tax liability, the taxpayer applied the 10% rate to all sales, based upon the F.O.B. Newton Upper Falls, Massachusetts, price, thereby excluding all costs of shipping and warehousing from the taxpayer's plant in Newton Upper Falls to the public warehouses on the west coast on balls shipped to west coast warehouses.

7. The Internal Revenue Service, after audit of the taxpayer's excise tax returns for 1957 and 1958, on March 11, 1960 assessed the following additional excise taxes and interest:

| Period | Kind of Tax and Code Section | Additional Tax | Interest 4/30/57 to 3/11/61 |
|---|---|---|---|
| March 31, 1957 | Manufacturers Excise-4161 | 169.90 | 29.16 |
| June 30, 1957 | Manufacturers Excise-4161 | 162.36 | 25.40 |
| Sept. 30, 1957 | Manufacturers Excise-4161 | 335.06 | 47.40 |
| Dec. 31, 1957 | Manufacturers Excise-4161 | 519.67 | 34.54 |
| March 31, 1958 | Manufacturers Excise-4161 | 347.35 | 38.78 |
| June 30, 1958 | Manufacturers Excise-4161 | 373.80 | 36.06 |
| Sept. 30, 1958 | Manufacturers Excise-4161 | 384.11 | 31.29 |
| Dec. 31, 1958 | Manufacturers Excise-4161 | 789.87 | 52.50 |
| | | 3,082.12 | 295.13 |

8. Said assessment was based upon the inclusion of the following amounts paid for the above-referred to shipping and warehouse costs for shipments to the public warehouses on the west coast of the United States.

| Period | Amount |
|---|---|
| 3/31/57 | $ 1,868.83 |
| 6/30/57 | 1,785.99 |
| 9/30/57 | 3,685.67 |
| 12/31/57 | 5,716.37 |
| 3/31/58 | 3,820.85 |
| 6/30/58 | 4,111.85 |
| 9/30/58 | 4,225.20 |
| 12/31/58 | 8,688.60 |
| | $33,903.36 |

As the sales had been completed without billing the customer for the tax on the shipping and warehouse costs, they were considered to be tax-included sales, and accordingly $\frac{1}{11}$ of such costs was determined to be the additional tax due.

9. The taxpayer, on March 24, 1960, paid to the District Director the sum of $3,377.25 in satisfaction of the assessment described in item No. 7 supra.

10. On May 4, 1960, the taxpayer filed with the District Director of Internal Revenue, Boston, Massachusetts, separate Forms 843, Claims for Refund, for the years 1957 and 1958, in the amounts of $1186.99 and $1895.13, respectively, both plus interest, copies of which are attached to the Complaint filed herein as Exhibits A and B.

11. More than six months have elapsed since the filing of the Claims for Refund and this suit by the taxpayer is not barred by Section 6532 of the Internal Revenue Code of 1954.

12. No part of the aforesaid $3377.25 of excise taxes and interest assessed on March 11, 1960 and paid on March 24, 1960, has been refunded to the taxpayer.

On the basis of the above-stated facts plaintiff contends that the 75¢ additional charge which it makes to its west coast customers to cover its shipping and warehousing costs should not be considered a part of the price of the articles on which the 10% excise tax is computed as required by 26 U.S.C.A. § 4161. In making this contention plaintiff relies on

the express provisions of 26 U.S.C.A. § 4216, which section defines "price" as that word is used in 26 U.S.C.A. § 4161. Plaintiff's argument is that the 75¢ separate charge covers transportation and delivery and, therefore, should be excluded from the price of the article.

26 U.S.C.A. § 4216 provides:

"(a) *Containers, Packing and Transportation Charges.*—In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary or his delegate in accordance with the regulations."

It is the Government's position that the 75¢ charge incurred for transportation and delivery is not excludable from the price upon which the tax is computed and imposed, unless the said charge is incurred directly pursuant to an actual specific sale. The Government asserts that such charges are not excludable if they are primarily for the convenience of the manufacturer, and it argues in its Brief that the bowling balls involved herein were not sent by plaintiff to the west coast pursuant to actual completed sales, but were delivered for the convenience of the manufacturer for storage on the west coast pending anticipated orders from customers. Stated otherwise, the Government's position seems to be that unless the 75¢ charge was incurred in connection with a sale which was a fait accompli, the taxpayer would not be entitled to exclude that 75¢ charge

from the price used in computing the amount of the tax due.

The manufacturer's excise tax was first imposed on sporting goods under the provisions of Section 609 of the Internal Revenue Act of 1932. The 10% tax, as it applied to bowling balls, was more clearly spelled out in Section 3406(a)(1) of the Revenue Act of 1941. This tax was increased to 15% by amendment in 1951 and was carried over as Section 4161 of the Internal Revenue Code of 1954, although it was there reduced to 10% of the price for which the balls were sold.

■ In defining "price" as used in Section 4161, Section 4216 of the Internal Revenue Code of 1954 does not differ in any material way from its forerunners, Section 619 of the 1932 Act and Section 3441 of the 1941 Act. Although the other subsections of 4216 were amended in 1954, Subsection (a), which is the pertinent portion here, remained the same. Legislative history of this tax indicates that it was meant to be levied on a manufacturer's wholesale price for his product and not on the retail price. In 1932, the Chairman of the Committee on Ways and Means for the House of Representatives, in explaining the manufacturer's excise tax bill to the House, emphasized this as the purpose of the law. Vol. 75, Congressional Record, pp. 5693, 5694, 5789, 5904. The Senate Committee on Finance also stated: "The manufacturer's excise tax proposal is to levy the tax once upon the article in its finished state, but at its wholesale selling price, not at the retail price." Vol. 75, Congressional Record, Senate Report 665, pp. 10085, 11361, 11657. House Report 708 and Senate Report 665 further emphasize that any charge having no connection with the manufacturing process would not be included in the price forming the basis for the tax.

There is no indication that the original intent of Congress in adopting this measure was modified in the subsequent re-enactments. Aside from changes in rates in some instances, no substantive changes

were contemplated by Congress in passing Sections 4216 and 4161 of the 1954 Code. See House Report 1337, 1954 U.S. Code, Congressional and Administrative News, p. 4468; Senate Report 1662, ibid., p. 5127.

In Interpreting Section 619 of the 1932 Act, the Treasury Department, through promulgation of Article 12 of Regulation 46, recognized initially the intent of Congress to "exclude from the price, charges which have no connection with the manufacturing process." In 1940, however, the Treasury Department more clearly crystalized this interpretation of the statute through the adoption of Section 316.12 of Treasury Regulation 46, which was made applicable to the 1954 Code by Treasury Decision 6.91, C.B. 1954-2, 47. This section states in substance that transportation and delivery charges incurred pursuant to a bona fide sale are excludable.

In the only Supreme Court case involving what is now Section 4216, Fitch Company v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472 (1945), the Court gave interpretation to the legislative definition of "price" as embodied in that Section. The precise question presented by that case was whether advertising costs should be included as part of the manufacturer's selling price or excluded as "other costs" referred to in Section 4216. By unanimous decision the Court held that advertising costs, since they are incurred prior to actual shipment and are an integral part of the wholesale price, are not comparable to transportation, delivery, insurance, or installation charges, which Section 4216 specifically excludes. Thus, they cannot be held to be "other charges," referred to in this section.

Although the question there was somewhat different from the one raised here, the interpretations made by the Court in arriving at its decision are particularly pertinent to a decision in the case at bar. In the opinion, written by Mr. Justice Murphy, it is stated, at page 584, 65 S.Ct. at page 411:

"* * * Section 619(a) was designed to lay down specific rules for determining this selling price, especially in relation to costs incurred after the article itself had been manufactured. It provides for the use of the manufacturer's or producer's f. o. b. price at the factory or place of production. In essence, all manufacturing and other charges incurred prior to the actual shipment of an article and reflected separately or otherwise in the f. o. b. wholesale price are to be included in the sale price underlying the tax, while all charges incurred subsequent thereto are to be excluded. Hence any additional charge which a purchaser would not be required to pay if he accepted delivery of the article at the factory or place of production may be so excluded."

The Government, on page 9 of its Brief, argues that the last sentence of this passage represents merely dicta by the Court which cannot be construed as a flat rule excluding all charges which a purchaser pays above and beyond the price of the article at the factory. But it is clear that the quoted passage, taken in its entirety, does express the rationale for the decision. The Court, by the language used in this passage, left no doubt that the purpose of Section 619(a) was to present specific rules for determining the elements to be used in computing the price upon which the tax was to be levied, and this was to be the wholesale price which a purchaser would pay if he were to obtain the goods in finished form at the place of production.

Section 316.12 of the Treasury Regulations, however, as interpreted now by the Government, brings into the determination of the price a completely new factor which was not considered either by Congress in enacting these provisions or by the Supreme Court in reviewing the provisions as it did in the Fitch case. The additional factor which the Government seeks to include is whether the costs

of transportation and delivery were. incurred pursuant to an actual sale and for the benefit of the customer.

Thus, the Government is urging this Court to read into Section 4216 the requirement that the taxpayer must show that the shipping and warehousing costs he seeks herein to exclude in computing the price which serves as the basis for the excise tax, must have been incurred by it in connection with an actual sale which, although the Government does not spell it out, must presumably have been contracted for before the taxpayer incurred the costs in question. I find nothing in the plain language of the statute itself, or in its legislative history, to warrant this novel interpretation. I believe this interpretation sought by the Government stems from a confusion by Government counsel of the distinction between an actual and a prospective sale on the one hand, and the distinction, as exemplified by 26 U.S.C.A. § 4216(b) (3), between a sale and a pseudo-sale on the other hand.

I think it is clear that the principle of statutory construction, *ejusdem generis*, requires the exclusion of the 75¢ shipping and warehousing charge involved herein. I can conceive of no costs which could come within the meaning of the phrase "or other charge" used in 26 U.S.C.A. § 4216(a) if the instant charges do not. Congress, after specifically enumerating transportation, delivery, insurance, and installation costs, then added "or other charge." To adopt the Government's contention in this case would be to rule, in effect, that Congress meant absolutely nothing by the words "or other charge." If the principle of *ejusdem generis* has any validity at all, the charges in the instant case are excludable under Section 4216(a).

I find that the plaintiff is entitled to a refund, as claimed, the amount of which will be computed in accordance with the agreement of the parties set forth in paragraph 14 of their stipulation.

Judgment for the plaintiff.