**POLAROID CORPORATION,**
Plaintiff, Appellant,

v.

The **UNITED STATES** of America,
Defendant, Appellee.

No. 5102.

United States Court of Appeals
First Circuit.

July 17, 1956.

Woodbury, Circuit Judge, dissented.

Isaac M. Barnett, New York City, with whom Julius Silver, New York City, Harry P. Goldstein, Boston, Mass., and Silver, Saperstein & Barnett, New York City, on brief, for appellant.

David O. Walter, Attorney, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Hilbert P. Zarky, Attorneys, Washington, D. C., Anthony Julian, U. S. Atty., and Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered February 28, 1956, in the United

States District Court for the District of Massachusetts dismissing the complaint following a trial without jury upon the merits.

The action was brought under 28 U.S. C. §§ 1340 and 1346 to recover an excise tax of $4.24 paid by Polaroid Corporation, a Delaware corporation having its principal place of business in Massachusetts, upon the sale of a camera, pursuant to § 3406(a) (4) of the Internal Revenue Code of 1939, 26 U.S.C. § 3406(a) (4), which provides in part:

"§ 3406. *Excise taxes imposed by the Revenue Act of 1941*

"(a) *Imposition.* There shall be imposed on the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to the rate, on the price for which sold, set forth in the following paragraphs (including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof):

\*　　\*　　\*　　\*　　\*

"(4) *Photographic apparatus.* Cameras \* \* \*, 10 per centum. \* \* \* "

This is a test case to determine whether the incidence of this tax is upon Polaroid or upon Greist Manufacturing Company, a Connecticut corporation having its principal place of business in Connecticut, which was permitted by the judge below to intervene.

The facts are undisputed. The Polaroid Highlander Camera was invented by the president of Polaroid, Dr. Edwin H. Land. Polaroid owns product patents on the camera and certain of the component parts, but has no patent covering any process or operation involved in making the camera.

Greist fabricates the camera pursuant to a contract purporting to be a sales agreement under which Greist agreed to sell and deliver to Polaroid, at a fixed price per delivered camera, 100,000 cameras to be produced by Greist in accordance with approved specifications.

Greist worked out all production techniques and independently of Polaroid established the unit price of the cameras.

All manufacturing operations involved in the production of the cameras are performed by Greist or its subcontractors. All materials and parts are purchased or produced by Greist. All labor and supervisory personnel are supplied by Greist. Polaroid advances no money or credit. The cameras are delivered by Greist in a finished and packaged condition. Polaroid furnishes only printed matter to be inserted in the package.

Greist has complete control of all manufacturing methods and production, subject only to Polaroid's right to make tests to determine whether the cameras meet specified standards.

All standard production tools are owned by Greist. Specialized tools are designed by Greist and purchased or fabricated at its own expense, but the contract provides that Polaroid shall purchase these tools over a period of time from Greist at cost.

Greist maintains a supply of finished cameras from which shipments are made pursuant to Polaroid's instructions either to Polaroid in Cambridge or directly to Polaroid's consignees.

The Polaroid trademark is affixed to the camera by Greist. Title to all cameras remains in Greist until they are segregated following Polaroid's approval of the six sample cameras taken from each day's production. Greist guarantees the camera and component parts against defects.

The contract contains an escalator clause providing for changes in the unit price of the camera to reflect changes of 10¢ or more in Greist's manufacturing costs resulting from general changes in base wage rates or the competitive market price of materials.

In his opinion the trial judge said:

" \* \* \* Polaroid not only agrees to buy Greist's entire output, but it dictates the amount of that output. If Polaroid's orders do not use up Greist's capacity, Greist is not free to sell elsewhere. If various costs go up, the risk is Polaroid's. If Greist manages to cut them, the gain is Polaroid's. The specialized tools are Polaroid's. The product patents, without which Greist could not operate, are retained by Polaroid, except for an implied license, for Polaroid's own benefit. Polaroid may terminate without cause, and Greist can

never make another camera. In many important ways, therefore, Polaroid retains the dominant hand.

"The patents seem to me of particular significance. If Greist were the ordinary uncontrolled manufacturer it would have to pay royalties to Polaroid, which, in turn, would be reflected in the sales price upon which the tax would be computed. Plaintiff's counsel made it plain in his opening that it was his contention, and would be Greist's, for whose tax, if any, the contract made Polaroid responsible, that the tax should be Greist's on the basis of Greist's cash price to Polaroid. This disregards the fact that Polaroid was supplying a necessary and valuable component of any sale, a license under the patents. This absence of royalties is an abnormal situation. I think Polaroid is trying to eat its cake and have it."

The trial judge went on to say:

" * * * Obviously there is bound to be a difficult border line as to when, in the concept of this act, one is a manufacturer or only a buyer. The case at bar may be close. It is my opinion, however, that the balance favors the government. * * *"

We agree that Polaroid is the manufacturer of the camera within the meaning of the statute for the reasons just quoted.

We believe further that the sale, so-called, of the cameras by Greist to Polaroid does not represent a "first sale" of the product under the rule of Indian Motocycle Co. v. United States, 1931, 283 U.S. 570, 574, 51 S.Ct. 601, 602, 75 L.Ed. 1277 where the Court said:

" * * * It is not laid on all sales, but only on first or initial sales —those by the manufacturer, producer or importer. Subsequent sales, as where purchasers at first sales resell, are not taxed. Counsel for the government base their con-

tention on the requirement that the tax be paid by 'the manufacturer, producer or importer'; but we think this requirement is intended to be no more than a comprehensive and convenient mode of reaching all first or initial sales * * * ."

Even assuming that the relationship between the parties was that of buyer and seller rather than principal and agent, the "sale" of these cameras transferred to Polaroid only the bare right to possession of the physical materials. Greist did not transfer to Polaroid the right to use these cameras or the right to resell them, since it could convey no more than it had of the various incidents of ownership. It is true, of course, that Polaroid could use or resell the cameras but this was made possible only by rights previously vested in Polaroid and *not by virtue of any property rights conveyed to it by Greist.*

We believe that a "sale" which conveys no right to use or resell the product, but only a bare right to possession, is not a sale within the meaning of § 3406(a) (4).

The judgment of the district court is affirmed.

WOODBURY, Circuit Judge (dissenting).

This is indeed a close case. Nevertheless the fact remains that Polaroid fabricated no part of the completed cameras, nor is there any basis for saying that the cameras were made by Greist either as Polaroid's agent, or as Polaroid's alter ego. Greist did not manufacture only Polaroid's cameras but in addition manufactured a variety of mechanical "precision assemblies," principally for sewing machines, for other purchasers. Neither were the cameras fabricated by Greist from any parts or materials furnished by Polaroid to which it retained title which would bring this case within the provisions of subsection (b) of Treasury Regulations 46 (1940) § 316.4 which in its entirety reads:

"Who is a manufacturer—(a) The term 'manufacturer' includes a

person who produces a taxable article from scrap, salvage, or junk material, as well as from new or raw material, (1) by processing, manipulating, or changing the form of an article, or (2) by combining or assembling two or more articles.

"(b) Under certain circumstances, as where a person manufactures or produces a taxable article for a person who furnishes materials and retains title thereto, the person for whom the taxable article is manufactured or produced, and not the person who actually manufactures or produces it, will be considered the manufacturer."

Polaroid and Greist are wholly separate and distinct entities who struck an arm's length bargain whereby Greist as an independent contractor "manufactured" the cameras in the sense of making them, fabricating them, putting them together, with its own employees out of its own materials, and parts it purchased from third parties, and then sold them for an agreed price to Polaroid. The fact that because of Polaroid's patents Greist had and legally could have only one customer for the cameras and the fact that the cameras were made according to Polaroid's specifications and subject to its inspection seem to me beside the point. Certainly if Greist in violation of the patent law and its contract with Polaroid sold a camera or cameras to some one other than Polaroid it would be liable for the tax on those cameras.

It seems to me that in ordinary language Greist was the manufacturer and Polaroid a purchaser who sold the cameras at wholesale. Thus to impose the tax on Polaroid is to base the tax not on the manufacturer's sale price in accordance with the statute but on the wholesaler's sale price, which naturally is greater since it includes, presumably, in addition to the cost of the goods to the wholesaler (the price for which the manufacturer sold them) the wholesaler's mark-up for handling costs, selling, overhead and profit. I would reverse.