**UNITED STATES of America,**
**Defendant, Appellant,**

v.

**STOWE–WOODWARD, INC., Plaintiff,**
**Appellee.**

**No. 5984.**

United States Court of Appeals
First Circuit.

June 28, 1962.

Rehearing Denied July 25, 1962.

John B. Jones, Jr., Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli and Edward L. Rogers, Attys., Dept. of Justice, W. Arthur Garity, Jr., U. S. Atty., and William C. Madden, Asst. U. S. Atty., on the brief, for appellant.

M. Gordon Ehrlich, Boston, Mass., Bingham, Dana & Gould, Boston, Mass., on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This action to recover a portion of certain payments collected as a manufacturers' excise tax, I.R.C.1954, Ch. 32, on bowling balls, 26 U.S.C.A. § 4161, was tried in the district court upon stipulated facts. The sole question is whether the amount sought was based upon a price which improperly included a "transportation, delivery * * * or other charge." The court held for the taxpayer and the government appeals.

Taxpayer is incorporated in Massachusetts, where is its sole factory. Its sales are nation-wide. It customarily packages and ships its product four balls to a carton. Balls shipped directly from Massachusetts are sold f. o. b. factory. Taxpayer found that by shipping in carload lots to a warehouse on the west coast it could, even after including warehouse charges, reduce the per-carton cross-country shipping costs from $1.50 to approximately 75 cents. Also, warehousing provided balls ready for immediate local delivery. Accordingly, to improve its competitive position in the area taxpayer adopted the policy of making such shipments and warehousing in anticipation of orders. A west coast customer is now charged the Massachu-

setts factory price, plus 75 cents attributed to warehousing and shipping costs, and balls previously shipped[1] are sold to him f. o. b. the local warehouse. It is the government's position, which the district court rejected, that this 75 cent charge is part of the price upon which the tax is to be computed and is not an excluded transportation charge.

The manufacturers' excise tax has applied to sporting goods for many years. It applies to a great many other specific articles which the government informs us would, because of similar business practices, raise the same question involved in this case. The tax is imposed upon the first sale. Polaroid Corporation v. United States, 1 Cir., 1956, 235 F.2d 276, cert. den. 352 U.S. 953, 77 S. Ct. 325, 1 L.Ed.2d 244. It is upon the wholesale price, if there is one. 26 U.S. C.A. § 4216(b). Section 4216(a) indirectly provides that certain matters are to be excluded.

"(a) *Containers, packing and transportation charges.*—In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. *A transportation, delivery, insurance, installation, or other charge* (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary or his delegate in accordance with the regulations." (2d italics supplied.)

In other words, the "price for which an article is sold" essentially excludes nothing incurred by the manufacturer up to the moment of shipment, even the packaging cost. There is no intent to reduce

---

1. For discussion of an exception, see infra.

the price, as taxpayer contends,[2] to purely manufacturing costs. Thus there is no exclusion for general expenses, such as advertising, even though these do not contribute to the manufacturing process. F. W. Fitch Co. v. United States, 1945, 323 U.S. 582, at pp. 584–585, 65 S.Ct. 409, at p. 411, 89 L.Ed. 472. There the court said, "Regardless of whether we consider such expenses technically as manufacturing costs, it is obvious that they are incurred prior to the actual *shipment* of articles *to wholesale purchasers* and that they enter into the composition of the wholesale selling price." (Italics supplied.)

■ The essence of the present question would seem to be this. The taxpayer, not its customer, incurred this 75 cent charge. It incurred it to improve the merchantability of its product. By making the balls readily available to customers on the coast, and at a lower total cost to the customer, it added to their attractiveness, or "put value in the articles," Ayer Co. v. United States, Ct. Cls., 1941, 38 F.Supp. 284, 289, 93 Ct. Cl. 386, fully as much as by advertising. This expense was not only incurred prior to a shipment to any purchaser, but it was incurred by taxpayer at its own risk before the balls were in any way spoken for—there might never be a customer.

Undeterred by the Supreme Court's statement that the significant event is "actual shipment" to the wholesaler, taxpayer points to the fact that in the original committee report it was stated, "In general, [the basis of the tax] should be the manufacturer's or producer's price at the factory or place of production." H.Rep.No.708, 72d Cong. 1st Sess. p. 37, 1939–1 Cum.Bull. (Part 2) 457, 483. The language of the act was not so

specifically limited. The committee's statement was in terms a generalization. It recognized that "[i]nnumerable situations arise which can be met only by administrative determination." Id. at 481. We do not believe that the committee's generalization, or the dictum in Fitch repeating it, 323 U.S. at 584, 65 S.Ct. 409, was intended to preclude administrative exceptions for special situations. At the most it created a possible ambiguity. The Commissioner early resolved any ambiguity against the taxpayer. In G.C.M. 21114, 1939–1 Cum. Bull. (Part 1) 351–4 there was given a list of hypothetical situations in which the base price would not exclude certain illustrated costs. The first two of these almost precisely fit the case at bar. The ruling was that such a shipment cost was part of the manufacturer's costs because it was for the "benefit or convenience of the manufacturer." Id. at 352. It is noteworthy that subsequent portions of this memorandum were expressly approved in Fitch, where they were described as "consistent administrative construction of the statute." 323 U.S. at 586, 65 S.Ct. 409. The rulings presently involved show a consistent pattern with those so approved, and are part of a piece.

■■ Quite apart from such references in Fitch, considerable leeway is allowed for administrative interpretation of a statute. See, e. g., United States v. Leslie Salt Co., 1956, 350 U.S. 383, 76 S. Ct. 416, 100 L.Ed. 441; Commissioner v. South Texas Lumber Co., 1948, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831. This principle applies to a G.C.M. ruling, and is not limited to regulations. Corn Products Refining Co. v. Commissioner, 1955, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29.[3] If, in the light of its committee report, Congress was dissatisfied with this

2. Taxpayer cites Campana Corporation v. Harrison, 7 Cir., 1940, 114 F.2d 400, 410, for the proposition that only normal "manufacturing" costs are to be included in the base, seemingly unmindful of the fact that this case was overruled in F. W. Fitch Co. v. United States, 1945, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472, infra.

3. There is also a pertinent regulation, Treasury Regulations 46 (1940 ed.) Sec. 316.12, reaffirmed, T.D. 6091, 1954–2 Cum. Bull. 47, which, in referring to a "bona fide" sale, is entirely consistent but not so specific as the G. C. M.

ruling, it has had over twenty years to take action. However, while during this period the act has been frequently amended, no change has been made in this section. Under the circumstances taxpayer, who is apparently the first to take issue, comes twenty years too late. Cammarano v. United States, 1959, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462; United States v. Leslie Salt Co., supra; Corn Products Refining Co. v. Commissioner, supra. We hold that the 75 cents here involved is not to be excluded as a "transportation, delivery * * * or other charge." [4]

One circumstance calls for special consideration. According to the stipulation a minor number of balls were shipped to the coast following a customer's order, rather than in advance of orders. Taxpayer, on whom is the burden of proof, failed to show how many balls were so covered. But, consistent with our views herein expressed, if specific balls were earmarked in Massachusetts for a west coast customer and were delivered to him, the 75 cents charged to such customer was a true shipping charge incurred by him, and should not have formed the basis of the tax. Taxpayer should be allowed to establish the number of balls falling in this category. But this does not include balls merely shipped to the warehouse to replace stock.

Judgment will be entered vacating the judgment of the District Court and remanding the action to that court for further proceedings not inconsistent herewith.

WOODBURY, Chief Judge (dissenting).

With reference to the predecessor statute, in substance similar to the one under consideration in the case at bar, the Court in F. W. Fitch Co. v. United States, 323 U.S. 582, at page 584, 65 S.Ct. 409, at page 411, 89 L.Ed. 482 (1945), said:

"In essence, all manufacturing and other charges incurred prior to the actual shipment of an article and reflected separately or otherwise in the f. o. b. wholesale price are to be included in the sale price underlying the tax, while all charges incurred subsequent thereto are to be excluded. Hence any additional charge which a purchaser would not be required to pay if he accepted delivery of the article at the factory or place of production may be so excluded."

And again at page 585, of 323 U.S., at page 411, of 65 S.Ct. the Court said:

"Pre-shipment charges relative to coverings, containers and placing an article in condition for shipment are specifically included in the determination of the selling price. But a subsequent 'transportation, delivery, insurance, installation, or other charge' is to be excluded if properly established."

The reduced transportation costs here were incurred subsequent to shipment and they were not charged to a purchaser who accepted delivery at the factory or place of production. Therefore they were properly excluded according to the standard set forth by the Supreme Court in the F. W. Fitch case.

It is conceded that the cost of transporting bowling balls to a specific, identified purchaser is not to be included in the base upon which the tax is calculated. The question is whether reduced transportation costs, also paid by the purchaser, and incurred as much for the benefit of the seller as for the buyer, to ship balls in quantity to the west coast in an-

---

4. The district court felt that the phrase "or other charge" required a decision in taxpayer's favor because the court could think of no other charge except this one. We do not accept the logic of such a principle. This is a general statute, and the fact that no other charges could be imagined in this case, if that was the court's point, is not the test. In other situations we can readily think of other, "similar"

(Fitch Co. v. United States, supra, 323 U.S. at 586, 65 S.Ct. 409, 89 L.Ed. 472) charges, as, for example, when a customer, wishing his goods stored after purchase, incurs a demurrage charge. Nor, on this record, can we agree with the court's characterization of the government's position as "novel." The shoe is on the other foot.

ticipation of sales should be treated any differently. I see no basis in the statute itself or in the Fitch case for a distinction which causes exclusion to turn upon whether the shipment is pursuant to a completed sale. The issue as I see it is rather whether the costs were incurred prior or subsequent to shipment.

My associates place great weight upon G.C.M. 21114, 1939–1 Cum.Bull. (Part 1) 351–4 and the fact that Congress has had over twenty years to change that ruling had it so desired. Conceding that the silence of Congress may be used as a make-weight argument, I think that its silence can as well be construed as indicating approval of the rationale of F. W. Fitch Co. v. United States, supra, which laid down a test contrary, so far as here relevant, to the administrative ruling. I would affirm on the opinion of the District Court.

On Petition for Rehearing.

ALDRICH, Circuit Judge.

■■ Taxpayer's petition for rehearing essentially repeats that sales price necessarily means "f. o. b. factory." The statute does not so provide. Nor does taxpayer answer the question we proposed in oral argument that if there were two factories, one on the east coast, and one on the west where the f. o. b. price was higher, would the tax on a west coast purchase be at the east coast price because the customer could have chosen to buy there? We would not distinguish for the purpose of this tax between a place of production and a place of distribution. If a customer finds the articles located at a particular place of distribution, where he necessarily pays a certain price, more desirable, that is the "price" of those particular articles. At least that must be so after twenty years of administrative practice. Taxpayer not only seeks to discount a G.C.M. as representing administrative practice, but cf. Helvering v. Janney, 1940, 311 U.S. 189, 61 S.Ct. 241, 85 L.Ed. 118; McFeely v. Commissioner, 1935, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83; but to disregard Fitch's reference to this one. As we

have already observed, taxpayer is sometimes given to applying its blind eye to the telescope when looking at Fitch. However, the question is not simply how much force the ruling had when it was issued, but how much it has accumulated. See Griswold, A Summary of the Regulations Problem, 1951, 54 Harv.L.Rev. 398, 417–18.

Because we found it unnecessary to rely on Treas.Reg. 46 (1940 ed.) 316.12, we did not deal with taxpayer's contention, again repeated, that this regulation was "superseded" by Regulation 330.1–1 (1958). Section 330.1–1 does not in terms repeal anything, and we believe did not repeal section 316.12 unless there was an inconsistency. We find none. It may be noted that the last sentence expressly condemns a separate billing of "expenses" as a means of avoiding the tax.

The petition for rehearing is denied.

WOODBURY, Chief Judge, dissents.