**HUNT FOODS AND INDUSTRIES, INC.**

v.

**The UNITED STATES.**

No. 218–66.

United States Court of Claims.

Jan. 22, 1971.

William R. Nicholas, attorney of record, for plaintiff. Austin H. Peck, Jr., John H. Hall, Los Angeles, Cal., Milton L. Ray, William K. Bachelder, Stuart S. Opotowsky, Fullerton, Cal., and Latham & Watkins, Los Angeles, Cal., of counsel.

Frances M. Foltz, Washington, D.C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller and Theodore Peyser, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

LARAMORE, Judge.

In this case plaintiff, Hunt Foods and Industries, Inc., sues to recover alleged overpayments of manufacturers' Federal excise tax paid during the period beginning October 1, 1958 and ending June 30, 1965. Plaintiff asks this court to find that it is entitled to recover taxes, plus assessed interest, in the amount of $211,278.64, plus statutory interest on the amount of recovery.

The specific Federal excise tax to which our attention is focused was codified into section 4211 of the Internal Revenue Code of 1954 (26 U.S.C. § 4211). This tax was applied to the sale of matches by the manufacturer, producer or importer and was originally imposed by the Revenue Act of 1932, P.L. 72–154, 47 Stat. 169.[1] The tax imposed by section 4211 was subsequently repealed by the Excise Tax Reduction Act of 1965, P.L. 89–44, 79 Stat. 136, effective June 22, 1965. Nevertheless, the issue presented by this case is of contemporary significance because of the continued vitality of section 4216(a).[2]

Section 4216(a), which originally appeared as section 619 of the Revenue Act of 1932, *supra*, sets forth the basis upon which the manufacturers' excise tax is determined and is, therefore, one

---

[1] Section 4211 of the Internal Revenue Code of 1954, which appeared as section 612 of the Revenue Act of 1932, is set forth in full hereafter:

"There is hereby imposed upon the sale by the manufacturer, producer, or importer of matches, a tax of 2 cents per 1,000 matches but not more than 10 percent of the price for which so sold, ex-

cept that in the case of fancy wooden matches and wooden matches having a stained, dyed, or colored stick or stem, packed in boxes or in bulk, the tax shall be 5½ cents per 1,000 matches."

[2] All references to Code sections will be to the Internal Revenue Code of 1954 unless otherwise indicated.

of the most important provisions in the excise tax area. Consequently, it is to section 4216(a) that we will direct our opinion, since it is this section which presents an interpretation dilemma between the parties.

To resolve the problem of interpreting section 4216(a) was not an easy task. Both parties have presented very good arguments, both orally and on brief, and it is a close case. However, the long-standing administrative practice in the area, together with the principles upon which it has developed, convince us of the defendant's position notwithstanding the persuasive arguments of plaintiff. We must, therefore, hold for the defendant.

The facts of this case indicate that plaintiff, through its division, Ohio Match Company, manufactured matches at its plant in Wadsworth, Ohio during the years in question. After the matches were produced and packaged, a portion of the total production was shipped to the plaintiff's public and private warehouses throughout the country where they were eventually sold to wholesale grocery jobbers, direct account grocery store chains or tobacco jobbers. This portion, the exact amount of which is unclear, had not been sold or committed to any specific customer and was not shipped directly to the customer from the plant at Wadsworth. Upon eventual sale of this portion, the facts indicate that as a general practice no separate or specific charge was made to any customer for the cost of such pre-sale transportation except for sales made west of the Rocky Mountains. It has also been shown that this pre-sale transportation was made so that plaintiff would be in a more competitive position with those match producers whose production facilities were in the area of sale.

Plaintiff also makes direct sales to certain customers directly from the plant in Wadsworth. As for these sales there is no dispute as to how the tax is to be computed, since it is conceded by the defendant that the cost of transportation which makes up a certain portion of the sales price should be excluded when computing the Federal excise tax. (*See*, section 4216(a)). However, as for the computation of the excise tax on those sales made from the plaintiff's warehouses, the parties differ.

Plaintiff, during the years in question, computed the excise tax on sales from the warehouses by first excluding the cost of pre-sale transportation from the total sales price. It is plaintiff's contention that this practice is in accord with the clear language of section 4216(a). Defendant, however, differed with plaintiff and, therefore, assessed a deficiency based on the difference between the tax as computed without exclusion of pre-sale transportation and the tax as computed pursuant to plaintiff's method. Defendant asserts that section 4216(a) does not allow an exclusion from the sales price for transportation costs which occur prior to a *bona fide* sale.

As noted earlier, the relevant excise tax section in this case is section 4216(a); that section provides as follows:

> (a) *Containers, packing and transportation charges.*—In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary or his delegate in accordance with the regulations.

This section, originally enacted as section 619 of the Revenue Act of 1932, *supra*, supplies the necessary definition of the word "price" which must be defined

for purposes of the excise tax because it is the price for which an article is sold that provides the basis upon which the tax is computed. For example, section 4211 provided a limitation upon the excise tax on matches (other than wooden matches) of "not more than 10 percent of the *price* for which so sold * * *." (Emphasis supplied). Therefore, in order to determine the limitation of section 4211, the taxpayer must know what is included in the term "price".

To assist taxpayer in the determination of what is to be included in the manufacturer's sales price for excise tax purposes, the Treasury, in 1939, issued G.C.M. 21114, 1939–1 Cum. Bull. (Part 1) 351. This memorandum was issued primarily to explain the exclusionary part of section 4216(a) which provided that "[a] transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price * * *." The G.C.M., by way of responses to questions, provided generally that only in respect of *bona fide* sales may the charges specified in section 619 [§ 4216(a)] be excluded. (G.C.M. 21114, *supra*). One of such questions is addressed to the same problem with which we are concerned, and the answer thereto is the same as the defendant's position in this case:

> *Question (2):* A manufacturer makes no sales from the factory, all deliveries being made from branch warehouses in various cities, the price to the customer being the same at all the warehouses. May he exclude the freight charges incurred in shipping his products to the branch warehouse?

> *Answer:* A distinction should be drawn in considering the exclusion of freight charges from the selling price between shipments of goods for the sole benefit and convenience of the manufacturer and other shipments constituting the delivery of articles in

connection with their sale. Only such charges as are connected with the delivery of articles to a customer pursuant to a sale are to be excluded. Freight charges incurred in moving goods from a factory to a warehouse before a sale is made pertain more closely to expenses attributable to the manufacturer than to deliveries made upon a sale to a customer. Under this rule freight charges incurred in shipping products from a factory to a warehouse before a sale is made may not be excluded. [G.C.M. 21114, 1939–1 Cum.Bull. (Part 1) 351, 352.]

Following G.C.M. 21114, the Treasury promulgated Regulation 46, section 316.-12 (1940 Ed., as amended through December 1956) entitled "Exclusion of charges for transportation, delivery, etc., generally." This regulation was introduced in 1940 (26 C.F.R. § 316.12, 1940 Supp., as amended by T.D. 4998, 1940–2 Cum. Bull. 300) and provided, in its pertinent part, for the same *bona fide* sale condition as was set forth earlier by G.C.M. 21114:

> Charges for transportation, delivery, insurance, installation, and other charges actually incurred in connection with the delivery of an article to a purchaser pursuant to a bona fide sale, are to be excluded in computing the tax. [26 C.F.R. § 316.12, 1940 Supp.]

Regulation 46, section 316.12, in its amended form, was eventually made applicable to the 1954 Code by T.D. 6091, 1954–2 Cum. Bull. 47. Therefore, during the years in question, both the regulation and G.C.M. 21114 were in effect and both administrative statements emphasized the need for a *bona fide* sale before exclusion of transportation charges from the sale price for purposes of computing the excise tax.[3] Consequently, there is little doubt as to the administrative practice involving the application of section 4216(a) and, fur-

3. The principles set forth in G.C.M. 21114 were made applicable to the 1954 Code through publication of Rev.Rul. 68–509, 1968–2 Cum.Bull. 508 which restated the conclusions of G.C.M. 21114.

thermore, the judicial interpretations of section 4216(a) preceding this case also indicate a construction consistent with that set forth by the defendant.

The first of the cases to deal with section 4216(a) is Ayer Company v. United States, 38 F.Supp. 284, 93 Ct.Cl. 386 (1941) which was also concerned with the exclusionary language of section 4216(a). In that case, the excise tax was imposed on cosmetics and toilet articles and the plaintiff argued, among other things, that section 619(a) of the 1932 Act (which is section 4216(a) of the Internal Revenue Code of 1954) eliminated advertising expense from the sales price because it was included in the exclusionary language by the phrase "other charge." In holding that such expenses were not included in the "other charge" language this court established the foundation upon which subsequent cases have dealt with the exclusionary language of section 4216(a). The most concise statement of that foundation is set forth at 38 F.Supp. 284, 289, 93 Ct. Cl. 386, 396:

> As we have said, advertising has added value to the article, and has enabled the manufacturer to secure therefor a better price, just as have the vitamins and its other tangible component parts. For this reason we see no basis for concluding that Congress meant to exclude these costs.

This "added value" test was subsequently approved and expanded upon by the First Circuit in United States v. Stowe-Woodward, Inc., 306 F.2d 678 (1st Cir. 1962), cert. denied, 371 U.S. 949, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963). The plaintiff in *Stowe-Woodward* sought to exempt pre-sale transportation charges for shipping bowling balls across the country. In holding that the charges could not be excluded under section 4216(a), the court stated, at 306 F. 2d 678, 680:

> The essence of the present question would seem to be this. The taxpayer, not its customer, incurred this 75 cent charge. It incurred it to improve the

merchantability of its product. By making the balls readily available to customers on the coast, and at a lower total cost to the customer, it added to their attractiveness, or "put value in the articles," Ayer Co. v. United States, Ct. Cls., 1941, 38 F.Supp. 284, 289, 93 Ct. Cl. 386, fully as much as by advertising. This expense was not only incurred prior to a shipment to any purchaser, but it was incurred by taxpayer at its own risk before the balls were in any way spoken for—there might never be a customer.

The *Stowe-Woodward* case, which deals with the identical issue to that presented in this controversy, followed the *Ayer* decision as to the "added value" test and, in addition, the First Circuit applied the standards set forth by the Supreme Court in F. W. Fitch Co. v. United States, 323 U.S. 582, 585, 65 S.Ct. 409, 411, 89 L.Ed. 472 (1945). The *Fitch* case interpreted section 4216(a) in reference to the exclusion of advertising and sales costs and, in holding that such expenses were not to be excluded, the court applied the additional standard that all expenses which "are incurred prior to the actual shipment of articles to wholesale purchasers * * *" should be included in the base upon which the excise tax is computed.

In view of the foregoing, it appears that the legal precedents in this area have clearly established a standard for exclusion of transportation, delivery, insurance, installation, or other charges that is not unlike the standards set forth by G.C.M. 21114 and Treasury Regulation 46, section 316.12, *supra*. This standard can be concisely stated by the following quotation from the Supreme Court's *Fitch* decision, 323 U.S. 582, 584–585, 65 S.Ct. 409, 411:

> Regardless of whether we consider such expenses technically as manufacturing costs, it is obvious that they are incurred prior to the actual shipment of articles to *wholesale purchasers* and that they *enter into the composition of the wholesale selling price*. * * *. [Emphasis supplied.]

Notwithstanding what seems to be overwhelming authority against it, plaintiff nevertheless contends that in adopting Title IV of the Revenue Act of 1932, *supra,* it was not intended by Congress that the exclusion of transportation charges be conditioned upon a prior *bona fide* sale. Plaintiff contends that section 4216(a) is not ambiguous and that the regulations impose a requirement not found by reading the statute. If, however, it can be found that section 4216(a) does present an ambiguity, then it is the legislative history that should be consulted wherein no mention is made of the *bona fide* sale requirement. Indeed, plaintiff asserts, the Congress intended that the tax be applied without discrimination, and to impose the requirement of a *bona fide* sale as defendant proposes flies in the face of the congressional intent by favoring those manufacturers who choose not to sell their wares other than directly from the factory. Finally, plaintiff contends that *Stowe-Woodward, supra,* was wrongly decided because the First Circuit did not correctly apply the test as established by the Supreme Court in *Fitch, supra.* That test, claims the plaintiff, is whether transportation costs are incurred after the completed product is placed in a container ready for shipment; if such costs are so incurred, plaintiff claims they should be excluded from the price for excise tax purposes.

It is the opinion of this court that, first of all, the court in *Stowe-Woodward* correctly applied the *Fitch* decision to their case. We do not agree with plaintiff in its assertion that the *Fitch* case established a very narrow test based on the time when the product is packaged and ready for shipment. Plaintiff fails to recognize that the Supreme Court stated the test in terms of shipment *to wholesale purchasers* which, in our opinion, fortifies the defendant's position, and, in the words of *Stowe-Woodward,* 306 F.2d at 682, indicates that plaintiff is "sometimes given to applying its blind eye to the telescope when looking at *Fitch.*"

It also appears that plaintiff in its contentions has lost sight of the true measure of the tax. As stated in the original G.C.M. 21114, *supra,* the tax is based upon the *price* for which an article is sold and, therefore, until there is a *sale,* the basis for determining the tax is unknown:

> * * * Inasmuch as such taxes are based upon the price for which an article is sold, and since section 619 specifies the charges which shall be included and those which shall be excluded in determining such price, it is evident that there can be no inclusion or exclusion of any charge unless and until a sale is made. In fact, some of the charges specified in section 619— charges for transportation, delivery, and installation—can not be definitely ascertained until the sale is made and the articles are delivered to the purchaser. [G.C.M. 21114, 1939–1 Cum. Bull. (Part 1) at 351.]

In view of the true nature of the tax, as we understand it, we cannot agree with the plaintiff that the excise tax in question divorces itself from the sales price to the extent advanced by the plaintiff. In our opinion, *Stowe-Woodward* recognized the true nature of the tax and correctly applied the law to the facts as presented.

As for the expressed intent of the Congress which, in our opinion, does not help either litigant, the most that can be said is that it seems to indicate a desire that the tax be applied without discrimination. (See, H.R. Rep. No. 708, 72nd Cong., 1st Sess. (1932); 1939–1 Cum. Bull. (Part 2) 457.) Plaintiff, therefore, claims that the defendant's position on the interpretation of section 4216(a) is contrary to the expressed intent of the legislature in that it clearly discriminates against manufacturers which, like plaintiff here, choose to sell wares from various warehouses as opposed to those which sell only from manufacturing facilities. The discrimination argument was also brought out by plaintiff in the *Fitch* case, *supra,* by arguing that to

treat some manufacturers differently for excise tax purposes simply because that manufacturer chooses to advertise its product instead of letting the wholesalers advertise is to discriminate and, therefore, such interpretation does not coincide with the legislative intent. The court, in *Fitch*, 323 U.S. 582, 586–587, 65 S.Ct. 409, 412, responded to that argument in a way that is equally applicable to the argument made in this case:

> It is argued that this conclusion results in a discrimination against a manufacturer who indulges in his own advertising and selling campaigns in favor of one whose products are advertised by his customers and that Congress could not have intended such a discrimination. But this discrimination, to the extent that it may exist, is an unavoidable consequence of an excise tax based on the wholesale selling price. Such cost factors as labor, materials and advertising naturally vary among competing manufacturers; different costs and different methods of doing business in turn may cause the wholesale selling prices to lack uniformity. And if these prices are taxed without adjustment for differing cost factors, tax inequalities and discriminations inevitably result.

The most relevant portion of the above discussion points out that different methods of doing business inevitably cause different prices which in turn cause the tax to vary. And since the adjustment (transportation) with which we are concerned has been defined as being limited in its scope, we are powerless to provide other statutory provisions to relieve the natural tax inequalities which are inherent in a flat tax imposed on the wholesale selling price (*see, Fitch, supra*, 323 U.S. 582, 587, 65 S.Ct. 409).

Moreover, and as an indication of why we feel that the legislative history does not aid either party, those same legislators who asked that the tax be applied uniformly also directed that a great deal of authority be exercised in the administration of the law to assure a sound, smoothly functioning, and flexible administration. They also explained that:

> * * * The bill then permits the sale of articles tax free from one licensee to another. Thus, the product of one manufacturer which is to be used as a material by a second manufacturer, passes through all stages of manufacture without the imposition of a tax. In this manner the tax is imposed but once—upon the final *sale* as a finished product entering the *channels of consumption* [Emphasis supplied; H.R. Rep. No. 708, *supra*, 1939–1 Cum. Bull. (Part 2) 480.]

Consequently, it appears that, at best, the intent of Congress poses inconsistent directives which are difficult to reconcile in favor of either of the differing opinions. As a result, we must give special emphasis to the administrative interpretation of the legislation in question, since those administrative pronouncements, *i.e.*, the regulations and G.C.M. 21114, *supra*, "constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." Commissioner of Internal Revenue v. South Texas Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). There is also the additional factor of the continued practice in this area. For over 30 years the administration of this statute has been consistent with the position asserted by the defendant in this case. To change that interpretation at this late date would require more convincing evidence of the statute's misinterpretation than we have here. (*See,* Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938).)

Therefore, in view of the foregoing authorities and the established administrative practice, together with the sound reasoning upon which that practice has developed, we must find for the defendant and dismiss the plaintiff's petition.

## FINDINGS OF FACT

The court, having considered the stipulations, set forth at paragraphs 1 through 21, and the admissions, set forth at paragraphs 22 through 26, and the briefs and argument of counsel makes findings of fact as follows:

1. The plaintiff is a corporation organized under the laws of the State of Delaware, authorized to do businesss in the State of California, having its principal office at Fullerton in the County of Orange, State of California.

2. The Ohio Match Company is a division of plaintiff which manufactures and sells matches. The sales of matches by plaintiff for the period involved herein, October 1, 1958 to June 30, 1965, were subject to the manufacturers' excise tax imposed by section 4211 of the Internal Revenue Code of 1954, as amended. Section 4211 of the Code was repealed by the Excise Tax Reduction Act of 1965, P.L. 89–44, effective June 22, 1965, so that no further excise taxes will be payable by plaintiff on the sale of matches after the period ended June 30, 1965.

3. All matches sold by plaintiff during the period involved herein were manufactured at plaintiff's plant in Wadsworth, Ohio, except in the case of wooden matches where the preliminary step of manufacturing the wooden splits was performed at a plant in Mancos, Colorado (prior to 1959 this was at Coeur d' Alene, Idaho) and the wooden splits were then shipped to Wadsworth for final manufacturing.

4. At its plant in Wadsworth the matches were packed into cases in packages in the form in which they were delivered to plaintiff's customers who were wholesale grocery jobbers, direct account grocery store chains, and tobacco jobbers.

5. A portion of the plaintiff's production of matches during the period involved herein was shipped directly from its plant at Wadsworth, Ohio, to its customers. The delivery costs on such shipments were eliminated by plaintiff from the selling price for the purpose of computing the basis for the manufacturers' excise tax imposed by section 4211 of the Code with respect to sales of matches in those instances where the tax computed at two cents per 1,000 is more than ten percent of the manufacturer's selling price. The exclusion of such delivery and handling costs on direct sales is not now in issue.

6. The balance of plaintiff's production during the period involved herein was shipped from it plant at Wadsworth, Ohio, to approximately 48 public and company-owned warehouses, of which 5 were in the West Coast area and the remainder were widely scattered throughout the United States.

7. For the period from October 1, 1958 through December 31, 1961, plaintiff filed with the District Director of Internal Revenue at Cleveland, Ohio, its manfacturers' excise tax returns and paid to the District Director the taxes shown due thereon.

8. Prior to the audit of the period from October 1, 1958 to December 31, 1961 the financial books and records of plaintiff's Ohio Match Company division were transferred from Wadsworth, Ohio, to plaintiff's principal office at Fullerton, California.

9. An audit of plaintiff's excise tax returns for the period from October 1, 1958 to December 31, 1961 was conducted by the District Director of Internal Revenue at Los Angeles, California, and a deficiency in the amount of $80,331.33, with interest thereon in the amount of $10,204.47, was proposed. Plaintiff paid the proposed deficiency of $80,331.33 in taxes and $10,204.47 in interest to the District Director of Internal Revenue at Los Angeles, California, on or about August 24, 1962.

10. On or about June 14, 1963 plaintiff filed with the District Director of Internal Revenue at Los Angeles, California, a claim for refund on Treasury Form 843 for the period from October 1, 1958 to December 31, 1961 ("Claim for Refund No. I").

11. On or about June 30, 1964, the District Director of Internal Revenue at Los Angeles, California, notified plaintiff of the disallowance of Claim for Refund No. I.

12. For the period from January 1, 1962 to June 30, 1964, plaintiff filed with the District Director of Internal Revenue at Los Angeles, California, its manufacturers' excise tax returns and paid to the District Director the net taxes shown due thereon.

13. For the period from January 1, 1962 to June 30, 1964, the excise tax was computed by plaintiff so that the sales price of matches included transportation and handling charges from plaintiff's factory in Wadsworth, Ohio, to public and company warehouses throughout the United States. The excludable delivery and handling costs were computed using a weighted average formula sanctioned by Revenue Ruling 59–203, 1959–1 C.B. 354, for purpose of determining the tax basis and whether the tax is computed at two cents per 1,000 or ten percent of the selling price. The weighted average formula was approved by the District Director of Internal Revenue at Los Angeles, California, for the year ending June 30, 1963 by a letter dated February 20, 1963, and for the year ending June 30, 1964 by letter dated March 5, 1964.

14. On or about April 30, 1965, plaintiff filed with the District Director of Internal Revenue at Los Angeles, California, a claim for refund on Treasury Form 843 for the period from January 1, 1962 to June 30, 1964 ("Claim for Refund No. II") for the taxes paid because of including in the tax basis the transportation and handling charges from its factory in Wadsworth, Ohio, to public and company warehouses throughout the United States.

15. On or about July 29, 1966, the District Director of Internal Revenue at Los Angeles, California, notified plaintiff of the disallowance of Claim for Refund No. II.

16. For the period from July 1, 1964 to June 30, 1965, plaintiff filed with the District Director of Internal Revenue at Los Angeles, California, its manufacturers' excise tax returns and paid to the District Director the net taxes shown due thereon.

17. For the period from July 1, 1964 to June 30, 1965, the excise tax was computed by plaintiff so that the sales price of matches included transportation and handling charges from plaintiff's factory in Wadsworth, Ohio, to public and company warehouses throughout the United States. The excludable delivery and handling costs were computed using a weighted average formula sanctioned by Revenue Ruling 59–203, 1959–1 C.B. 354, for purpose of determining the tax basis and whether the tax is computed at two cents per 1,000 or ten percent of the selling price. The weighted average formula for the period July 1, 1964 to June 30, 1965, was approved by the District Director of Internal Revenue at Los Angeles, California, by a letter dated February 3, 1965.

18. On or about July 12, 1967, plaintiff filed with the District Director of Internal Revenue at Los Angeles, California, a claim for refund on Treasury Form 843 for the period from July 1, 1964 to June 30, 1965 ("Claim for Refund No. III") for the taxes paid because of including in the tax basis the transportation and handling charges from its factory in Wadsworth, Ohio to public and company warehouses throughout the United States.

19. No action has been taken on Claim for Refund No. III and more than six months has passed since the filing of such claim.

20. No part of Claims for Refund Nos. I, II or III has been refunded, credited or repaid.

21. Plaintiff and defendant agree the amount of refund, if any, will be computed under Rule 131(c).

22. The matches which plaintiff shipped from its plant in Ohio to various public and company-owned warehouses throughout the United States were shipped to such warehouses prior to the sale of the matches so shipped.

23. Such presale shipments were not in anticipation of specific sales to specific customers.

24. Plaintiff paid all of the costs incurred in the presale shipment of its matches to public and company-owned warehouses throughout the United States.

25. Plaintiff sold its matches at a uniform base price, the "delivered price," which at any one time was the same all over the country, with only the following exception:

(a) The uniform base price was slightly higher west of the Rockies than it was east of the Rockies.

26. Plaintiff adopted the practice of shipping its product to warehouses around the country in order to improve its competitive position vis-à-vis other match manufacturers who could offer shorter delivery time because, unlike plaintiff, they had several plants, located in various parts of the country, where they manufactured their matches.

### CONCLUSION OF LAW

Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.