Jack LIFSCHITZ, Individually and on behalf of all persons similarly situated

v.

AMERICAN EXPRESS COMPANY.

Civ. A. No. 80–0279.

United States District Court, E.D. Pennsylvania.

March 18, 1983.

Seymour Kurland, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiff.

David H. Pittinsky by Karen Marek McAlinn, Bruce W. Kauffman, Lawrence D. Berger, Dilworth Paxson, Kalish & Levy, Philadelphia, Pa., for American Express Co.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff, a cardholder of defendant American Express Company ("American Express"), instituted this action, individual-

ly and on behalf of a putative class, and alleged violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA").[1] The amended complaint seeks monetary and injunctive relief with respect to certain billing practices in connection with an American Express flight insurance plan. The plaintiff also asserts pendent claims under Pennsylvania law for fraud, conversion, breach of contract, and breach of fiduciary duty. American Express moved to dismiss the amended complaint for failure to state a claim for which relief can be granted. For the reasons set forth herein, the motion has been granted in part and denied in part.

On a motion to dismiss under Fed.R. Civ.P. 12(b), all allegations of the complaint must be accepted as true. *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). Rule 12(b)(6), by its terms, limits us to a review of the statements in the complaint. Plaintiff alleged that American Express as the creditor of an open end credit plan issues a credit card, the American Express Card, for use in connection with the credit purchases of various goods and services, including tickets for airline travel. If an American Express cardholder uses his credit card to charge the purchase of an airline ticket, American Express provides him with a flight insurance policy in the amount of $75,000. This coverage, underwritten by Fireman's Fund America Life Insurance Co. ("Fireman's"), is always provided at no extra charge to the cardholder. However, if the cardholder is enrolled in American Express' Automatic Flight Insurance Plan (the "Plan"), upon charging an airline ticket for his use or the use of his spouse or dependent, the participating cardholder, his spouse or dependent is automatically provided with an additional $175,000 insurance coverage with respect to the purchased ticket. This coverage is also underwritten by Fireman's; however, each time a cardholder enrolled in the Plan uses his American Express Card to purchase an airline ticket, American Ex-

press charges his account three dollars ($3.00). Defendant's practice regarding this charge is complained of in this action.

Plaintiff claims that when a cardholder enrolled in the Plan charges an airline ticket but subsequently cancels the ticket and returns it unused for credit, defendant credits the cardholder's account for the amount of the unused ticket but does not credit the three-dollar charge for the unused insurance. If a cardholder does not cancel but changes his ticket in any way that incurs an additional credit charge, defendant imposes a three-dollar charge in connection with the change. This charge is in addition to the original charge. Plaintiff further claims that American Express handles an ancillary arrangement made in connection with the purchase of an airline ticket, such as a hotel reservation or car rental, as a separate flight transaction and imposes an additional three-dollar charge for each such transaction; no additional flight insurance is obtained thereby. Finally, plaintiff complains that American Express imposes a three-dollar charge when a cardholder participating in the Plan uses the card to pay for an airline ticket for a passenger other than the cardholder (or spouse or dependent child) éven though no insurance coverage is obtained thereby for such passenger.

American Express does not disclose to cardholders this practice of imposing a three-dollar charge on all ancillary travel arrangements and on airline tickets for persons not obtaining flight insurance thereby. Moreover, plaintiff argues, American Express has refused to credit accounts for these charges despite numerous complaints made by cardholders. Plaintiff contends this conduct gives rise to two claims for violation of the TILA: under §§ 121 and 127, 15 U.S.C. §§ 1631, 1637, for failure to disclose these practices at the time a cardholder enrolls in the Plan; and under § 166, 15 U.S.C. § 1666e, for failure to credit cardholders' accounts with the insurance charge upon the return of unused airline tickets.

---

1. On October 1, 1982, compliance with the Truth in Lending Simplification and Reform Act, Pub.L. No. 96–221, 94 Stat. 169 (1980) and revised Regulation Z, 46 Fed.Reg. 20,848 (1981) became mandatory. However, because this action was commenced in January, 1980, we apply the law applicable at that time.

## DISCLOSURE CLAIM

The purpose of TILA is expressed in Section 102, 15 U.S.C. § 1601:

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

Relying on this section of the TILA and its legislative history, defendant contends that the purpose of the Act is to enable a potential borrower to determine the true cost of credit[2] and plaintiff's claims are unrelated to the actual cost of credit. American Express contends that the allegations of the complaint at most establish an erroneous billing for unreceived services and, therefore, plaintiff's claims arise only under the "billing error" provisions of TILA (Part D), with which American Express claims it has complied.

The TILA should not be interpreted so restrictively. The expressed concerns of Congress, as stated in § 102, were not limited to disclosure of the actual cost of credit only. One purpose of TILA was "to protect the consumer against inaccurate and *unfair* credit billing and *credit card practices*." (emphasis added). Another was full disclosure of terms and conditions of credit card charges to promote intelligent comparison shopping by consumers contemplating the use of credit:

Title I, the truth in lending and credit advertising title, neither regulates the credit industry, nor does it impose ceilings on credit charges. It provides for full disclosure of credit charges, rather than regulation of the terms and conditions under which credit may be extended. *It is the view of your committee that such full disclosure would aid the consumer in deciding for himself the reasonableness of the credit charges imposed and further permit the consumer to "comparison shop" for credit.* It is your committee's view that full disclosure of the terms and conditions of credit charges will encourage a wiser and more judicious use of consumer credit.

H.R.Rep. No. 1040, 90th Cong., 2d Sess. (1968), *reprinted in* [1968] U.S.Code Cong. & Ad.News 1962, 1963 (emphasis added). The TILA must be liberally construed to effectuate these remedial purposes. *Mourning v. Family Publications Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *see, Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246 (3d Cir.1980); *Zeltzer v. Carte Blanche Corp.,* 514 F.2d 1156 (3d Cir.1975).

The second count of plaintiff's first amended complaint charges American Express with violations of §§ 121 and 127(a) of the TILA, 15 U.S.C. §§ 1631 and 1637(a),[3] in failing to disclose the three-dol-

---

**2.** *See,* 1968 U.S.Code Cong. and Admin.News, pp. 1962–1963; Hearings on S.5 before the Subcommittee on Financial Institutions of the Senate Committees on Banking and Currency, 90th Cong. 1st Sess.Pt. 1 (1967); Hearings on H.R. 11601 before the Subcommittee on Consumer Affairs of the Committee on Banking and Currency, House of Representatives, 90th Cong. 1st Sess. at p. 76.

**3.** The relevant provision under § 121 is subsection (a) which provides:

Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom

consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under this part [Part B—Credit Transactions] or Part D [Credit Billing] of this subchapter.

Pub.L. 90–321, Title I, § 121, May 29, 1968, 82 Stat. 152, as amended Pub.L. 93–495, Title III, § 307(c), October 28, 1974, 88 Stat. 1516.

Section 127(a) provides:

Before opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

lar charge for changes in flight ticketing, ancillary travel arrangements and ticket purchases for persons not covered by flight insurance. TILA requires a creditor to disclose various features of that plan extending credit under an open end consumer credit plan. The relevant statutory provision is § 127(a)(6), which provides that "[B]efore opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended ... [T]he conditions under which any other charges may be imposed, and the method by which they will be determined." Section 226.7(a)(6) of Regulation Z reiterates this requirement. 12 C.F.R. § 226.7(a)(6) (1980).

■ American Express contends that the phrase "any other charges" must be narrowly construed to refer only to finance charges or similar "cost of credit" charges. But defendant's construction of the provision is overly restrictive and fails to conform to the purposes of the Act. TILA has the broad purpose of promoting "informed use of credit" to enable consumers to know the true cost of credit and compare the terms of available credit plans. 15 U.S.C. § 1601; *Mourning v. Family Publications Services, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Because of their complexity and variety, credit transactions defy exhaustive regulation by a single statute. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559, 100 S.Ct. 790, 793–92, 63 L.Ed.2d 22 (1980). Consequently, Congress chose full disclosure rather than regulation of the terms or conditions under which credit could be expended. H.R.Rep. No. 1040, 90th Cong., 2d Sess. (1968); *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257 (3d Cir.1975).

In conjunction with the disclosure requirements, Congress delegated authority to the Federal Reserve Board (the "FRB") to elaborate and expand the legal framework governing commerce in credit. *Ford Motor Credit Co., supra; Mourning, supra.* Absent a clear expression in TILA, the Supreme Court has looked to the implicit character of the statutory scheme and has deferred to the FRB in interpreting the truth in lending enactments:

(1) The conditions under which a finance charge may be imposed, including the time period (if any) within which any credit extended may be repaid without incurring a finance charge, except that the creditor may, at his election and without disclosure, impose no such finance charge if payment is received after the termination of such time period.

(2) The method of determining the balance upon which a finance charge will be imposed.

(3) The method of determining the amount of the finance charge, including any minimum or fixed amount imposed as a finance charge.

(4) Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

(5) If the creditor so elects,

(A) the average effective annual percentage rate of return received from accounts under the plan for a representative period of time; or

(B) whenever circumstances are such that the computation of a rate under subparagraph (A) would not be feasible or practical, or would be misleading or meaningless, a projected rate of return to be received from accounts under the plan.

The Board shall prescribe regulations, consistent with commonly accepted standards for accounting or statistical procedures, to carry out the purposes of this paragraph.

(6) The conditions under which any other charges may be imposed, and the method by which they will be determined.

(7) The conditions under which the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended under the plan, and a description of the interest or interests which may be so retained or acquired.

(8) A statement, in a form prescribed by regulations of the Board of the protection provided by sections 1666 and 1666i of this title to an obligor and the creditor's responsibilities under sections 1666a and 1666i of this title. With respect to each of two billing cycles per year, at semiannual intervals, the creditor shall transmit such statement to each obligor to whom the creditor is required to transmit a statement pursuant to subsection (b) of this section for such billing cycle. Pub.L. 90–321, Title I, § 127, May 29, 1968, 82 Stat. 153, as amended Pub.L. 93–495, Title III, § 304(a), Title IV, § 415(1), October 28, 1974, 88 Stat. 1511, 1519, 1521.

At the very least ... caution requires attentiveness to the views of the administrative entity appointed to apply and enforce a statute. And deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive ....

*Ford Motor Credit Co.,* 444 U.S. at 565, 100 S.Ct. at 797.

While the FRB has not addressed the precise facts before us, at least two FRB Public Information Letters have required disclosure of certain fees *not* imposed as a finance charge or as a condition to the extension of credit. FRB Letter No. 890, May 14, 1975, CCH Consumer Credit Guide ¶ 31,216 responded to an inquiry by a financial institution operating an open end credit plan permitting customers to borrow money by drawing checks. The institution intended to impose a flat $3.00 fee for each overdraft check to reimburse the creditor for costs in processing the improper check; the FRB advised that the fee though not deemed to be a finance charge or a condition to the extension of credit must be disclosed to customers as "any other charge" under § 226.7(a)(6) of Regulation Z.

Similarly, FRB Letter No. 283, March 13, 1970, CCH Consumer Credit Guide ¶ 30,324, advised that a documentary stamp tax imposed by state law on customers receiving a cash advance under an open end credit plan was a "charge" under § 226.7(a)(6). The FRB Letter recognized that the tax did not constitute a term of credit under the plan.

These FRB letter opinions establish that a broad interpretation of "any other charge" is applied with respect to disclosure to promote an informed credit decision by a consumer. In comparing this plan with other American Express plans and with other means of obtaining credit for travel expenses, a consumer might give weight to whether an insurance charge would be imposed in connection with every ticket, credit transaction for a ticket change, or any other travel-related expense whether or not the traveller obtained insurance when the charge was made. The failure to disclose these repeated "insurance" charges might mislead cardholders in selecting a travel credit plan not otherwise chosen. The legislative intent to promote informed credit decisions by full disclosure of the cost of credit is frustrated thereby.

American Express' reliance on *Ford Motor Credit Co., supra* and *Johnson, supra* is misplaced. Those cases hold that the existence of acceleration clauses need not be disclosed as "default, delinquency or similar charges payable in the event of late payments" in connection with a single consumer transaction on credit (close end credit) not an open end credit such as this plan. They interpret §§ 128(a)(9) and 129(a)(7) of the TILA, 15 U.S.C. §§ 1638(a)(9) and 1639(a)(7), and rely on an interpretation of the FRB not involved in this case. Those sections of the TILA are distinguishable from § 127(a)(6). In §§ 128(a)(9) and 129(a)(7), the words "similar charges" follow "default, delinquency" in the same statutory clause; *ejusdem generis* operates to restrict the definition of "similar charges." In contrast, "any other charges" stands alone in § 127(a)(6); Congress must have intended it to have some meaning beyond the provisions of (1)–(5) and (7)–(8) in § 127(a). There is a fundamental difference in the credit transactions regulated by these sections. Sections 128 and 129 govern close end credit plans involving single extensions of credit. But § 127 governs open end credit plans by which repeated extensions of credit are made. The potential harm to consumers is greater under an open end plan because of the continuing nature of the creditor-consumer relationship.

American Express also relies on *Layfield v. Bill Heard Chevrolet,* 607 F.2d 1097 (5th Cir.1979), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). In *Layfield,* the failure of a car dealer to inspect an automobile after making a $3.00 charge for such inspection was held to be a breach of contract rather than a violation of

TILA;[4] the charge for which plaintiff was billed was disclosed but the service for which the charge was made was not performed. In contrast, Lifschitz has alleged the failure of American Express to disclose timely to its cardholders the charges for travel revisions, ancillary travel arrangements and insurance for uninsured passengers. Lifschitz' allegations go to the failure to disclose charges for which American Express intended to bill, not the failure to perform services for which the creditor has charged under the terms of a disclosed contract provision. Plaintiff alleges more than a breach of contract and falls within the proscriptions of the TILA.

The FRB interpretation appearing at 12 C.F.R. § 226.709 (1980) does not apply to the facts of this case.[5] It is expressly limited to credit transactions in which: 1) the card issuer and the seller are the same or related persons, 2) no finance charge is imposed, *and* 3) each customer is billed on a transaction-by-transaction basis. Such a credit plan is akin to a closed end plan which requires the more limited disclosure mandated by §§ 128 and 129. Here the card issuer and seller seem to be the same, but an extra charge is imposed for making ancillary travel arrangements and purchasing airline tickets even for those receiving

no insurance covering the flight. In addition, this Plan is an open end credit plan where the issuer maintains a cumulative account and bills the cardholder on a periodic basis; plaintiff does not allege Plan enrollees are billed on a transaction-by-transaction basis, so § 226.709 is inapplicable.

■ American Express seeks to restrict the interpretation of § 127(a)(6) by application of the principle of *ejusdem generis.* Where general words of a statute follow an enumeration of specific items, the general words are interpreted as applying only to other items similar in nature to those specifically enumerated. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980). As applied in this case, the phrase "any other charges" would be limited to charges earned by the creditor as a result of its extension of credit and analogous to the "finance charge" referred to in the preceding items enumerated in § 127(a)(1)–(5).

■ The rule of *ejusdem generis* is only an aid to the ascertainment of the true meaning of a statute. *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 89, 55 S.Ct. 50, 52, 79 L.Ed. 211 (1934); *see, Harri-*

---

4. The court also noted that General Motors Acceptance Corp. could not be liable for this failure to inspect since, as assignee of the contract between plaintiff and the dealer, it could only be liable for violations of the TILA apparent on the face of the assigned instrument.

5. 12 C.F.R. § 226.709 provides in pertinent part:

§ 226.709 Application of limited requirements to card issuers which bill customers on a transaction-by-transaction basis.

It has come to the Board's attention that certain credit cards are issued, the card issuer and the seller being the same person or related persons, in connection with which no finance charge is imposed and customers are billed in full for each use of the card on a transaction-by-transaction basis by means of an invoice or other statement reflecting each use of the card. No cumulative account which reflects the transactions by each customer during a period of time, such as a month, is maintained.

Section 103(f) of the Act requires all credit card issuers to comply with certain provisions, even though those provisions are gen-

erally applicable only to creditors of open end credit plans, and requires the Board to apply these provisions to all card issuers "to the extent appropriate." The question arises as to which of those provisions, as implemented by this Part, appropriately apply to such card issuers.

Such card issuers may bill customers on a transaction-by-transaction basis and need not maintain a cumulative account for each customer for which a periodic statement must be sent.

Prior to the first use of the credit card, the card issuer shall provide the customer with a statement setting forth the disclosures required by § 226.7(a)(9) and, as applicable, § 226.7(a)(6) and § 226.7(a)(7). The disclosure required by § 226.7(a)(6) shall be limited to those charges that are or may be imposed as a result of the deferral of payment by use of the card, such as late payment or delinquency charges. Such card issuers need not provide the disclosure required by § 226.7(a)(8). . . .

*son, supra.* It is commonly applied when general words immediately follow specific terms. *E.g., F.W. Fitch Co. v. U.S.,* 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472 (1945) ("a transportation, delivery, insurance, installation or other charge.").[6] In contrast to the statutory clauses involved in the cases relied upon by the defendant, § 127 has eight separate subsections that follow general introductory language. Subsection (6) refers only to "any other charges;" it is preceded by no other enumerated charges to delimit its generality. The rule of *ejusdem generis* cannot be applied in construing § 127(a)(6) where there is no other *"generis"* to which the catch-all ·phrase can be confined.

Finally, defendant contends that the $3.00 charge is removed upon request of the cardholder and that plaintiff's complaint is only that the charge is not automatically removed. Defendant also alleges plaintiff knew of this practice at the time he became a member of the Plan. Whether this is the fact and if so whether plaintiff's knowledge is sufficient to defeat the applicability of the Act is not clear from the pleadings. Perhaps that is why these issues have not been adequately briefed by the parties.

A claim cannot be dismissed for insufficiency unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McLain v. Real Estate Board of New Orleans,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) quoting from *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see,* 5 C. Wright & A. Miller, Federal Practice and Procedure §§ 1202, 1205–12076, 1215–1224 (1969). No such finding could be made with respect to plaintiff's disclosure claim.

## BILLING ERROR CLAIM

The first count of plaintiff's amended complaint charges American Express with violations of § 166 of the TILA, 15 U.S.C. § 1666e, in failing to credit plaintiff with the three-dollar insurance charge upon cancellation or change of a flight ticket.

Section 166 of the TILA provides:

With respect to any sales transaction where a credit card has been used to obtain credit, where the seller is a person other than the card issuer, and where the seller accepts or allows a return of the goods or forgiveness of a debit for services which were the subject of such sale, the seller shall promptly transmit to the credit card issuer a credit statement with respect thereto and the credit card issuer shall credit the account of the obligor for the amount of the transaction.

By its terms, § 166 requires that: 1) a seller be a person other than a card issuer, 2) the seller allow the return of goods or forgiveness of a debit for services, 3) the seller send notice to the card issuer, and 4) the card issuer grant a credit promptly.

■ Plaintiff has failed to state a claim for relief under this section. Plaintiff makes no allegation of the identity of the seller of the flight insurance. The relevant paragraphs of the complaint state:

9. . . . Under the terms of this Plan . . . additional insurance is also underwritten by Fireman's Fund America Life Insurance Company.

10. Each time that an American Express Cardmember enrolled in the Plan charges an airline ticket on his American Express card, defendant charges the cardmembers' [sic] account in the amount of three dollars ($3.00) as the cost for the $175,000 flight insurance.

These paragraphs describe a transaction in which the buyer (cardmember) pays three dollars to the seller (American Express) in consideration of the seller's issuance of insurance. The seller is not "a person other than the card issuer," so § 166 is inapplica-

---

**6.** *See also, United States v. Stowe Woodward, Inc.,* 306 F.2d 678, 680–81 (1st Cir.1962), *cert. denied,* 371 U.S. 949, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963) ("transportation, delivery or other charge"); *Zenith Radio Corp. v. Matsushita Elec. Ind. Co. Ltd.,* 402 F.Supp. 251, 258 (E.D. Pa.) *pet. denied* 521 F.2d 1400 (3d Cir.1975) ("other charges and expenses necessarily incident to the importation and sales").

**466**

ble. But even if these paragraphs are intended to allege that the seller is some other entity, i.e., the underwriter of the insurance, plaintiff's complaint still fails to state a claim because there is no allegation that this seller accepted return of the insurance and transmitted a credit statement to the card issuer. Plaintiff implies in his brief that the airline companies are the sellers of the insurance; however, no such assertion is made in the complaint.

 Section 166 was not intended to cover this situation. The purpose of § 166 was to relieve a credit cardholder from the obligation of dealing separately with the card issuer once a thirdparty seller has accepted a return of the goods. Goods to which this section would apply are the airline tickets or other travel arrangements procured on credit; there is no allegation that American Express has failed to credit these items promptly when notified of the cancellation of a ticket or other travel arrangements. The allegation is that an extra charge is imposed on the cardholder by the card issuer upon the sale of the underlying goods and such charge is distinct from the debit for underlying goods or services which were the subject of the sale. This practice is not prohibited by the Act so long as it is disclosed. Plaintiff has failed to state a claim for relief under § 166 of the TILA.

Because Count II of plaintiff's complaint states a claim for which relief may be granted under § 127(a)(6) of the TILA, it is unnecessary to address defendant's contention that plaintiff's state claims must be dismissed for want of a federal claim.

For the foregoing reasons defendant's motion to dismiss was granted as to Count I but denied as to Count II.